UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>NATIONAL STEEL AND SHIPBUILDING COMPANY, also known as NATIONAL STEEL & SHIPBUILDING COMPANY, et al.,<br><br>　　　　　　　Defendants. | Case No.: 09cv2275 AJB (BGS)<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. No. 134] |

Defendant, Star & Crescent Boat Company (hereinafter "S&C Boat"), filed a motion, [Doc. No. 134], seeking summary judgment on the following grounds: 1) there is no evidence that S&C Boat contributed to any of the environmental contamination at the Shipyard Site, 2) there is no evidence that S&C Boat is the successor-in-interest to San Diego Marine Construction Company (hereinafter "SDMCC")/Star & Crescent Investment Co. (hereinafter "Investment Co.), and 3) the District has no reasonable probability of locating evidence proving that S&C Boat is the successor-in-interest to SDMCC/Investment Co.[1] SDMCC is one of the parties potentially responsible for contamination of the

---

[1] Attached to the motion for summary judgment was a Request for Judicial Notice of the United States Tax Court's opinion in Estate of Oakley J. Hall, Deceased, Southern California First National Bank, executor v. Commissioner of Internal Revenue (1975) T.C. Memo. 1975-141,1975 WL 2771, [Doc. No. 134-3], which is hereby DENIED. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 1067 (N.D.Cal.2010) (stating that the court will not take judicial notice of such documents for the truth of the matter asserted therein.).

1

Shipyard Sediment Site in the San Diego Bay.  Plaintiff, the City of San Diego, and Defendants Cross/Counter-Claimants San Diego Unified Port District (hereinafter "SD Port") and Campbell Industries (collectively hereinafter "Opponents") filed oppositions, [Doc. Nos. 141,142 and144 respectively],[2] and S&C Boat filed a reply, [Doc. No. 145].[3]  The hearing set for October 28, 2011 at 1:30 p.m. before Judge Battaglia in Courtroom 12 is hereby vacated as this motion is appropriate for submission on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1.  Based upon the parties moving papers and for the reasons set forth herein, S&C Boat's motion for summary judgment is hereby DENIED.

## *Relevant Background*

Plaintiff, the City of San Diego, and Defendants National Steel and Shipbuilding Company ("NASSCO"), BAE Systems San Diego Ship Repair, Inc. (BAE Systems), Campbell Industries, San Diego Marine Construction Company ("SDMCC"), Star and Crescent Boat Company ("S&C Boat"), San Diego Gas & Electric ("SDG&E") and the United States Navy ("US Navy") were all named as "Dischargers" or "Persons Responsible" for alleged environmental contamination at the property known as the "Shipyard Sediment Site" by the California Regional Water Control Board, San Diego Region ("the Regional Board"), in Tentative Clean Up & Abatement Order No. R9-2005-0126 (the "Tentative Order") on September 15, 2010.  The Shipyard Sediment Site is a portion of the San Diego Bay along the eastern shore of the Bay in an area extending from approximately the Sampson Street Extension to

---

[2] Attached to the opposition, [Doc. No. 141], to the motion for summary judgment were the following:
Evidentiary Objections to Declaration of George Palmero, [Doc. No. 141-3], and the Evidentiary Objections to Declaration of Sarah Brite Evans, [Doc. no. 141-5], which are both hereby DENIED AS MOOT; Request for Judicial Notice, [Doc. No. 141-6], which is hereby GRANTED; Evidentiary Objections to Request for Judicial Notice [Doc. No.141-4], which is hereby SUSTAINED.

Attached to the opposition, [Doc. No. 142], to the motion for summary judgment were the following:
Request for Judicial Notice, [Doc. No.142-3] which is hereby GRANTED as to Req. Nos. 1-11, 17, 18, 21; DENIED as to Req. Nos. 12-16, 19-25.; the Objections to Request for Judicial Notice [Doc. No.142-5] is SUSTAINED.

[3] Attached to the reply to the motion for summary judgment were the following:
Evidentiary Objections to Declaration of K. Reyna, [Doc. No.145-1] and Evidentiary Objections to Declaration of W. McMinn, [Doc. No. 145-3], which are both DENIED AS MOOT.

the north and Chollas Creek to the south, and from the NASSCO shipyard facility and BAE Systems shipyard facility shoreline out to the San Diego main shipping channel to the west.

The Regional Board contends that Plaintiff and Defendants are jointly and severally responsible for alleged property damage, including, but not limited to, alleged damages to aquatic life, at and beyond leaseholds at the Shipyard Sediment Site once and/or currently occupied by Defendants and other entities. Since 1991, the Regional Board has been working with various private and governmental entities to address discharges of metals and other pollutant wastes to San Diego Bay marine sediment and waters located within and adjacent to the area collectively called the Shipyard Sediment Site.

SDMCC, owned and operated by the Hall family, operated a shipyard from approximately 1915 until 1972 on a leased portion of the Shipyard Sediment Site for shipbuilding purposes.[4] SDMCC's shipyard site was located in San Diego Bay south of the Coronado Bridge, generally between the Sampson Street extension and the mouth of Chollas Creek in the City of San Diego. Other than its shipyard operations, SDMCC had other businesses, including real property holdings and a boat division, Star & Crescent Boat Company (hereinafter "S&C Boat Company"), which operated the harbor excursion business. S&C Boat Company, along with a number of other ship owners, operated the only shore boat/water taxi operations throughout the San Diego Bay beginning in 1925 through an exclusive City of San Diego franchise issued to United Water Taxi Company.[5] As an operator under the franchise, S&C Boat Company was permitted to use the five authorized shore boat landings in the bay, two of

---

[4] In 1915 SDMCC agreed to lease area within the Shipyard Sediment Site for:
(1) The erection and maintenance of a building thereon for the purpose of carrying on and maintaining a marine ways, repairing boats and construction and launching of all kinds of water craft, with the right to construct and maintain thereon wharves and other structures necessary or convenient for the purpose above mentioned, the said wharves, buildings or other structures to be so constructed to meet with the approval of the Superintendent of Police and Harbor Affairs of the City of San Diego.
(2) That said Lessee shall have the right and privilege of reclaiming and filling in with material taken from the bottom of the bay, and not with any material brought in from outside of the Bay, all or any portion of said premises hereby lease, and provided further that no work shall be done upon nor use made of said premises that will materially decrease the amount of tidal waters of the Bay of San Diego.
SDMCC continued to lease area within the Shipyard Sediment Site, with successive leases from 1915 until it surrendered the property on July 14, 1972.

[5] True and correct copies of the September 4, 1925 Agreement between Harbor Water Taxi Company, Inc. and Star and Crescent Boat Company, City of San Diego Ordinance 11232, City of San Diego Ordinance 11024 and a letter dated May 13, 1932, from the City of San Diego City Attorney's Office to J.W. Brennan, Port Director, lodged with the court as Exhibits "I", "J", "K" and "L", respectively, and are incorporated by this reference; UF NO.7.

which were located with the Shipyard Sediment Site, for a number of years (Exhibits "I", "J", "K", "L"; UF No.8).[6]

The record indicates that from 1959 until 1972, S&C Boat Company used SDMCC's Shipyard Sediment Site to install and store diesel fuel storage tanks and pumping equipment to provide fuel to the boat division's equipment including the division's tug boats, barges, and ferries.(Exhibits "A", "B", "C", "D", "E", "F"; UF No. 10).  S&C Boat Company also utilized SDMCC's Shipyard Sediment Site facilities for the construction, repair, and fueling of its marine vessels during this period. *Id.* S&C Boat Company's use of SDMCC shipyard leasehold ceased when SDMCC sold the marine division assets to Campbell Industries/MCCSD on July 14, 1972.  After the sale of its shipyard assets to Campbell Industries in 1972, SDMCC, which still consisted of the investment division and boat division, changed its name to Star & Crescent Investment Co. ("Investment Co.").

On March 19,1976, Star & Crescent Boat Company (S&C Boat) was incorporated in California, signed by six original directors. On April 7, 1976, Investment Co. transferred its harbor excursion assets[7] and liabilities[8] to the newly-incorporated S&C Boat, the moving party in this motion, which operates the same harbor excursion business today. On April 9, 1976, the Board of Directors of the S&C Boat held a meeting and the six original directors resigned and were replaced by members of the Hall family.[9]  At that meeting, Mr. Hall Jr. and the other directors created stock in S&C Boat[10]. Also at the

---

[6] The first was located at the foot of Sampson Street in or adjacent to the SDMCC leasehold that is currently leased to BAE; the second landing was located the foot of 28th Street in or adjacent to the area currently leased to NASSCO (Exhibits "I", "J", "K", "L"; UF No.9).

[7] Six harbor excursion boats were listed among the assets transferred to S&C Boat, as well as two floats, two vehicles, and the right to use the name "San Diego Harbor Excursion." Doc. No. 134-2, SUF No. 17.  Also among the assets listed and transferred were four leases with the San Diego Unified Port District—two leases for 570 Harbor Drive (dated March 26, 1976 and August 21, 1973), B Street Pier lease dated March 26, 1976, and a lease dated January 2, 1976 for a building and space west of Harbor Drive between the Broadway and B street piers—all properties associated with the harbor excursion business. Doc. No. 134-2, SUF No. 14. The assets transferred were worth $805,332.13. Doc. No. 134-2, SUF No. 18.

[8] S&C Boat also assumed $86,506.30 in itemized liabilities from Investment Co.: $80,000 in notes payable, as well as employee advances, charter deposits, and accrued vacation and holiday pay. SUF No. 19.

[9] The six replacement directors were: 1) Leona Jackson elected as a, director and Secretary, 2) Kenneth Beiriger elected as a director and Vice President/Treasurer, 3) Stephan P. Carlstrom elected as a director and Vice President, 4) Raleigh and Janet Miles elected directors, 5) Judy Hall elected director, and 6) O.J. Hall Jr. elected director (Exhibit"6"; UF No. 15). Stephan Carlstrom, Janet Miles, and Judy

April 9th meeting, Mr. Hall Jr. reported that he had received a written offer from his Investment Company to transfer all the Investment Co.'s "right title and interest of every kind and description in and to its business and assets pertaining to its harbor excursion business," in exchange for the S&C Boat's assumption "of the debts and liabilities of said harbor excursion business as set forth in Exhibit "A," and one thousand five hundred (1,500) shares of the S&C's Boat's stock.[11] As a result, the Investment Co. held all 1,500 shares of S&C Boat's stock and S&C Boat received all of Investment Co.'s harbor excursion business assets and liabilities before March 31, 1976.[12] On October 26, 1976, Investment Co.'s transferred its 1,500 shares of S&C Boat stock back to Mr. Hall, Jr.'s children: Stephen P. Carlstrom, Judy Hall, and Janet Miles, who each received 500 shares.[13] Doc. No. 134-2, SUF No. 20. Under the terms of the stock sale agreement, these three individuals paid $765,400 to Investment Co. to purchase this stock,[14] and the payments were made from S&C Boat dividends until paid in full in 1981.[15] The Investment Co. continued to operate its own separate businesses, including the Lake Mead Ferry Service, Las Vegas Baggage Service, and Lasco Truck Rental & Equipment Co., until it dissolved more than 15 years after selling its harbor excursion business to S&C Boat.

### *Legal Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

---

Hall are all Mr. Hall, Jr.'s children.

[10] *See* Doc. No. 142, Ex.6; UF No. 17.

[11] *See id.* at UF No. 18.

[12] *See* Exhibit "6", pg. 11, ¶1 :9-10; UF No. 22.)

[13] In 1983, Judy Hall sold her 500 shares in S&C Boat back to S&C Boat for $400,000. SUF No. 23. In 1984, San Diego Harbor Excursion acquired all outstanding stock in S&C Boat from the two remaining shareholders, and in 1986, San Diego Harbor Excursion merged with S&C Boat. SUF Nos. 24 and 25. The board of directors of S&C Boat remained as the board of directors after San Diego Harbor Excursions, Inc. was absorbed (Exhibit "U", UF No. 46.)None of the current S&C Boat shareholders have any relationship with Investment Co., Stephen P. Carlstrom, Judy Hall, and/or Janet Miles. SUF No. 26.

[14] Doc. No. 134-2, SUF No. 21.

[15] Doc. No. 134-2, SUF No. 22.

1  genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a
2  verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).
3        In order to prevail, a party moving for summary judgment must show the absence of a genuine
4  issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense
5  on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins.*
6  *Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the
7  burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply
8  pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987.
9  "The moving party need not disprove the other party's case." *Id.*
10       Once the movant has made that showing, the burden shifts to the opposing party to produce
11 "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material
12 fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v.*
13 *Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must
14 come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v.*
15 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
16       The Court must review the record as a whole and draw all reasonable inferences in favor of the
17 nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However,
18 unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*;
19 *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken
20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine
21 issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
22 *Corp.*, 475 U.S. 574, 587 (1986)).

23                         ***Discussion***

24       S&C Boat's motion for summary judgment alleges that: 1) there is no evidence that S&C Boat
25 contributed to any of the environmental contamination at the Shipyard Sediment Site, 2) there is no
26 evidence that S&C Boat is the successor-in-interest to SDMCC/Star & Crescent Investment Co., and 3)
27 the District has no reasonable probability of locating evidence proving that S&C Boat is the
28 successor-in-interest to SDMCC/Star & Crescent Investment Company. The central issue in the present
   motion is whether S&C Boat is responsible as the successor-in-interest to SDMCC for potential

environmental contamination at SDMCC's shipyard in the San Diego Bay.  SDMCC operated a shipyard in the northern part of the Shipyard Sediment Site (the portion of the San Diego Bay and tidelands that is the focus of this CERCLA contribution action) from approximately 1915 until 1972.

### I. Whether S&C Boat Contributed to the Contamination at the SDMCC Shipyard Site

S&C Boat argues in its summary judgment motion that there is no evidence that S&C Boat contributed to any of the environmental contamination at the Shipyard Sediment Site.  S&C Boat states that it was first incorporated in 1976 and operates today primarily from the same location north of the San Diego-Coronado Bay Bridge that it has since incorporation.[16]  S&C Boat contends that there are no allegations that S&C Boat ever had any involvement with the Shipyard Sediment Site after 1976, and thus, S&C Boat has no direct liability for any environmental problems there.

Alternatively, however, the Defendant SD Port argues that S&C Boat's own corporate documents demonstrate that genuine issues of fact exist as to whether S&C Boat assumed the liability of SDMCC/Investment Co. as a result of the written offer from Investment Co. that transferred all "right title and interest of every kind and description in and to its business and 6 assets pertaining to its harbor excursion business," in exchange for the S&C Boat's assumption "of the debts and liabilities of said harbor excursion business as set forth in Exhibit "A," and 1,500 shares of the S&C Boat's stock. (Exhibit "6"; UF No. 18.)

The undisputed facts indicate that S&C Boat expressly assumed the liabilities listed in the Investment Co.'s offer.[17]  Defendant SD Port also contends that S&C Boat expressly and impliedly assumed all the liabilities not specifically listed in the offer before March 31, 1976. Since SDMCC operated its boat division, S&C Boat Company, beginning in 1925 and 1) utilized two shore boat landings located within the Shipyard Sediment Site; and 2) utilized SDMCC's Shipyard Sediment Site from 1959 until 1972 for the construction, repair, and fueling of its marine vessels, there is a genuine issue of material fact as to whether S&C Boat Company actually contributed to the environmental contamination at the Shipyard Sediment Site and whether S&C Boat assumed liability for this contamination when it accepted Investment Co.'s transfer offer.

---

[16] SUF Nos. 15 and 17.

[17] See Exhibits "A", "B", "C", "D", "E", "F"; UF No. 10.

### *II. Whether S&C Boat Is the Successor-in-interest to SDMCC/Investment Co.*

For summary judgment, S&C Boat, as the moving party, must show that the exceptions that create successor liability do not apply. *Fisher v. Allis-Chalmers Corp. Product Liability Trust*, 95 Cal.App.4th 1182, 1188 (2002). The general rule of successor liability under California law is that the corporate purchaser of another corporation's assets presumptively does not assume the seller's liabilities, unless: (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the sellers; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.[18] The Opponents of S&C Boat's motion contend there are questions of fact regarding: 1) whether there was an express or implied assumption of liability; 2) whether the S&C Boat was a mere continuation of SDMCC/Investment Company; and 3) whether the transfer of assets from Investment Company to S&C Boat was for the fraudulent purpose of escaping SDMCC's liability with regard to the Shipyard Sediment Site.

### *1) Whether S&C Boat Expressly or Impliedly Agreed to Assume Liability from Investment Co.*

As set forth above, the Court finds that there is a genuine issue of material fact as to whether S&C Boat Company actually contributed to the environmental contamination at the Shipyard Sediment Site and whether S&C Boat assumed liability for this contamination when it accepted Investment Co.'s transfer offer.

### *2) Whether S&C Boat is a Mere Continuation of SDMCC*

S&C Boat argues that the acquisition of the harbor excursion business did not result in a mere continuation or de facto merger between S&C Boat and Investment Co. because the two companies were owned and operated separately; Investment Co. continued to own and operate several other businesses and own real property, while S&C Boat engaged in the still-ongoing harbor excursion business. Alternatively, the Opponents of S&C Boat's motion argue that there are genuine issues of fact as to whether the asset purchase by S&C Boat was merely a continuation of the Investment Co.'s boat division.

---

[18] *Ortiz v. South Bend Lathe* (1975) 46 Cal. App. 3d 842, 846, disapproved on other grounds in *Ray v. Alad Corp.* (1977) 19 Cal. 3d 22, 34; *Fisher v. Allis-Chalmers Corp. Prod. Liab. Trust* (2002) 95 Cal. App.4th 1182, 1188.

When applying the continuation exception to the general rule of successor non-liability, the California Supreme Court states that liability will be imposed on a successor corporation upon a showing of one or both of the following elements: 1) inadequate consideration is given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; or 2) one or more persons were officers, directors, or stockholders of both corporations. *Ray v. ALAD Corporation* (1977) 19 Cal. 3d 22, 29.  The Opponents argue that the consideration given by S&C Boat to Investment Co. was grossly inadequate because the 1500 newly created shares of S&C Boat that were transferred to Investment Co. were initially valued at $15,000 and this in combination with S&C Boat's assumption of $86,000 of liabilities totals roughly $101,000, whereas the Harbor Excursion business was valued at over $800,000.[19]  S&C Boat argues in its moving papers that the value of the shares was actually in excess of $700,000 and S&C Boat paid this back to Investment Co. over a five year period from 1976 until 1981.  Despite S&C Boats arguments to the contrary, the Court finds that there is a genuine issue of material fact as to whether this subject transfer was for adequate consideration.

### 3)  *Whether the Transfer of the Harbor Excursion Business Was Fraudulent*

While the Court need not reach this element because genuine issues of material fact abound, the Court finds S&C Boat's argument that there is no evidence that S&C Boat's acquisition of the harbor excursion business was part of a fraudulent transfer, to be without merit. Given the sudden and unexplained resignation of all directors two days after S&C Boat was incorporated, the fact that the directors were then replaced by Hall family members, and the fact that Investment Co. and S&C Boat were closely run inter-related family businesses,[20] the Court finds that questions of fact remain regarding the transfer.

///

///

///

---

[19] O.J. Hall and his children and Investment Co. created the alleged $700,000 "fair market value" for the 1500 share of newly created S&C Boat Stock out of thin air on April 9, 1976, only two days after S&C Boat was incorporated and has no assets and the par value of the stock had been designated to be a maximum of $15,000. (AFs 11, 15).

[20] O.J. Hall, Jr. and Kenneth Beriger controlled both Investment Co. and S&C Boat years after S&C Boat's creation. (AFs 19-23).

### *Conclusion*

For the reasons set forth above, the Court hereby DENIES Defendant S&C Boat's motion for summary judgment, [Doc. No. 134], as there are genuine issues of material fact which preclude summary judgment.

IT IS SO ORDERED.

DATED: October 27, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge